The opinion of the court was delivered by
Gibson, C. J.
Under the Susquehannah Company, the title to the premises was in Gore,, from whom Duane acquired an equitable title by a parol contract in part executed by delivery of possession, and payment of a portion of the.purchase mon'ey. When the Connecticut claimants came to receive their titles from Pennsylvania, Gore, by agreement with Duane, obtained the patent in his own name, but in fact, as a trustee for Duane. The plaintiff below claims as a purchaser of the equitable title of Duane, at sheriff’s sale; and Chahoon, under whom the other defendants hold. *431 claims under a conveyance of the legal estate from Gore: so that the parties stand in the relation of cestui que trust, and trustee, the former demanding, and the latter resisting, a specific execution of the trust.
In this view, it is plain that the points which were made in relation to the supposed expiration of the lien, and the revival of it in 1811, were irrelevant. This court has held that the legal estate may be bound by a judgment against one, and the equitable estate, by a judgment against another; and that the interest of either may be transferred to a purchaser at sheriff’s sale. Thus two purchasers, the one under a judgment against a vendor after articles for a purchase, the other under a judgment against the vendee, will stand in the relation of vendor and vendee with all the rights and remedies which those whom they represent, could have claimed or exercised against each othei’. The x-eason is, that a judgment against a vendor-, binds, not only the legal estate, but the beneficial interest that remains in him, (which of course is an interest in the land to the amount of the unpaid purchase money;) and a judgment against the vendee, binds only the interest for which he has paid. The true question, thei-efore, was whether the sheriff’s deed had transferred the equitable estate of Duane: And it undoubtedly had, even though the lien of the judgment were expired; unless indeed, Duane had conveyed it away previously • to the levy, which was not pretended. A purchaser at sheriff’s sale can be implicated in the consequences of having suffered the judgment to expire, only in a controversy with a purchaser from the debtor by a conveyance previous to the levy: in a controversy between judgment creditors, the only remaining case in which a question of the sort can arise, he cannot be implicated at ail. Much less can a party who claims not under the title' of the debtor, but adversely to it, derive an advantage from the expiration of tbe lien, it being sufficient for the purposes of the purchaser, that the sale and conveyance of the sheriff has vested in him the estate which was in the debtor at the time of the levy. In regard to these immaterial points, therefoi-e, it is unnecessary to inquire whether the direction given were erroneous in the abstract or not, as it cannot in any event be used to the prejudice of the defendant in error.
The regularity of the proceedings on the scire facias to November Term, 1812, may be doubted; but they are sufficient to support the execution. The writ was issued against Duane and “ terre-tenants,” without naming them, which is the preferable course; and the sheriff returned that be had given notice to George Chahoon, Eleazer Lake, Ager Hoyt, and Christian G. Voerhing, without returning expressly, as he ought to have done, that they were terre-tenants in fact, much less that they were the terre-tenants of all the lands that were bound by the judgment. Duane was served by the present plaintiff under a special deputation; and, *432 at the return of the writ, judgment was signed against all by default. At the next term this judgment was set aside at the motion of Mr. Evans, who entered no appearance, and took no further part in the cause; and at the term succeeding, Mr. Ross appeared, as it is expressed, for Matthias Hollenback, the landlord .of the terretenants, and pleaded to issue, and it was found for him: Whereupon judgment was rendered on the verdict in favour of the terretenants, and, by default, against Duane. The plaintiff below was the party beneficially interested on the judgment, and also the purchaser under it at sheriff’s sale; and the plaintiff in error availing himself of this circumstance, objects that all the defendants are not disposed of on the record, judgment not having been rendered expressly against George Chahoon, for whom it is said Mr. Evans appeared. But Mr. Evans did not appear at all. While the judgment by default remained in force, the cause was at an end, and no appearance could be received; and after it again became a cause depending, Mr. Evans did not think proper to appear. It is absurd, therefore, to speak of his motion as an appearance. Chahoon did not appear specially; and as he cannot be distinguished from the other defendants who appeared along with their landlord, Hollenback, he may be considered as disposed of by the judgment in their favour. We ought to favour every intendment in support of a judgment, rather than defeat the party on technical grounds, by laying hold on an ambiguity arising from the shortness of our entries, and the looseness of our practice: especially where, as here, no one who ought to have been heard, can be prejudiced. The persons summoned were in fact not terre-tenants; nor were they expressly returned as such, and the return was ill, as well for this cause, as for want of an averment that they were the terre-tenants of all the lands that were bound. (2 Saund. 7, n. 7,) for being entitled to contribution among themselves, all must be named; and, therefore, if the plaintiff attempt to name them in the writ, and omit the name of some of them, the omission may be pleaded in abatement. (Ib. n. 10.) But they were in fact not terre-tenants, because they were only occupiers, and not owners of the fee. (lb. n. 9.) At all events none of them was a terre-tenant to Duane; for none derived title from him by a conveyance subsequent to the judgment, or had an estate that was bound by it; and none else is entitled to notice on a scire facias, for none can interpose between a judgment creditor and his right to satisfaction by execution, but one who may be prejudiced by the judgment. Hollenback and those who came into possession of the premises claimed by him, had a verdict, because he derived title by a conveyance which was previous to the judgment; and Chahoon, although having eutered originally under Duane, now claims adversely by a conveyance from Gore. On this defective return, then, we ought not to treat as parties, persons who do not distinctly appear to have been treat *433 ed as such in the court where the action was pending: nor even if they had been, ought we to favour an intendment against the regularity of the proceedings for want of disposing of them when they ought never to have been brought on the record at all. But here the most natural conclusion is, that Chahoon appeared and pleaded along with the tenants of Hollenback.
On the next point the judgment is to be reversed. The jury were informed that before the necessity of a tender could be urged, it ought to appear that a particular sum was due, and that there was some person to whom it might have been tendered; and further, that a tender was a condition precedent to recovery of the possession. Although this be true in the abstract, yet viewed in relation to the evidence it had a tendency to mislead. The trust was established by the admission of Gore, who at the same time declared that one hundred or two hundred dollars were due from Duane, and to go to Avery Gore, and John Shepard’s children; and as these children may have been minors without a guardian, and, therefore, without capacity to receive, the jury might naturally suppose they were alluded to as persons entitled to receive, taking their capacity for granted: consequently, that the want of such capacity would excuse the tender altogether. But there was no room for uncertainty on this head. The trustee in his lifetime, or his personal representative after his death, was obviously the person to receive the purchase money, and see to its application — a matter with which the cestui que trust had nothing to do. The jury may also have been induced to think, that under all circumstances, the necessity of tender was not clearly established; for the court certainly treated that as a matter resting in contingency: whereas payment of the purchase money and the conveyance of the title are, in all cases where the contrary has not been stipulated, mutual conditions which the parties are bound respectively to observe before calling for a specific execution of the contract: and with us, as was held in Wolfley v. Snyder, 8 Serg. & Rawle, 328, where the plaintiff relies on an equitable title, the tender must precede the action.
The remaining exception is not sustained. The original rights of the parties were given up for those which they acquired by the agreement to take out the title in a particular way. Duane might have contested the title before the commissioners, and if he had succeeded in obtaining the certificate and patent in his own name, Gore would have been concluded: but his right to do this was parted with for the terms of the agreement. Now if this right was not a doubtful one — and it certainly is far from being clear, that the original contract was within the statute of frauds — there is nothing in the point that was submitted; but even if it were doubtful, still the compromise of a doubtful right is a sufficient consideration to support an agreement. The original rights of Connecticut claimants have never been into as between themselves, the courts *434 never having gone further than to recognize a trust by agreement of the parties when the title was acquired under Pennsylvania; but where such a trust has been proved it has been executed according to the conditions and limitations of the contract.
Huston, J.
Blackburn obtained judgment on the 15th of October, 1806, with a stay of execution till the 1st of March, 1807. His administratrix issued a scire facias against Duane and the terre-tenants, to November Term, 1811, which was returned, served on G. Chahoon and several others, and served on Duane in Oswego by J. H., deputed for that purpose. Judgment generally opened, and a trial for defendants, terre-tenants of M. Hollenback, and verdict for them. It is admitted on both sides that Chahoon was not one of them. Judgment for them not to prejudice the plaintiff against other terre-tenants. Judgment against Duane by default, on the 26th of October, 1S13. To November Term, 1815, a scire facias by Blackburn’s administratrix against Duane and terretenants. This scire facias refers to the first judgment in 1806, and recites it: it does not notice the scire facias of 1811. It was returned, nihil. No terre-t.enants named in the writ or return. To Jlpril, 1816, another scire facias between the same parties. This Writ issued on the 19th of February, 1816. The writ is not here: it was returned nihil, and, on the 9th of Jlpril, 1816, judgment. Fieri facias to Jlugust: land levied and condemned. Venditioni exponas to Jlugust, 1817 — sold. Fieri facias to November, 1821: levied on houses and lots in question, valued at #2,400; and, on a venditioni exponas to Jlugust, 1822, sold to Ji II for fifty dollars.
It was proved, that Duane made the first improvement on the lot: that Chahoon lived there at the time of the judgment, and ever since: that Chahoon was Duane’s tenant in 1S06 and 1807, till Jlpril 1st, 1808; but never was after: that he then leased from J. Gore: that Duane demanded no rent since 1807: that the house then rented for ninety dollars, and was much improved since: that Hollenback, as agent'for Duane, settled with Chahoon about 1820, and demanded no rent after 1S07: that there was a suit between Duane and Chahoon, and Hollenback was agent for Duane: that Hollenback has paid most of this judgment to Blackburn’s attorney: that Blackburn revived this judgment, had scire facias issued and executions: that neither Blackburn nor his agent had any thing to do with these scire faciases and executions, but expressly refused: that the judgment was now assigned to Hollenback; but that he, as agent for Duane, or for some other reason, has paid oil' the greatest part of it.
It further appeared, that, under the compromising law, O.Gore returned this, with other property,'to the commonwealth, and received a certificate for it, and, in 1805, a patent from this state. This patent was conclusive against all commonwealth claimants.
It appeared that in 1806, O. Gore had stated to different persons, that he held the lot in question for Thomas Duane., and was ready *435 to convey to his assignee on receiving about two hundred dollars; but how this was due, did not'appear: it appeared the title was taken to Gore in pursuance of some agreement between Duane and Gore.
How Chahoon ceased to be Duane’s tenant, and leased from Gore, was not explained: but it appeared that Duane never claimed any rent from Chahoon after he had leased from Gore. In 1811, Chahoon bought from Gore.
I lay the scire facias of 1811 out of the case, because no judgment was had on it against Chahoon, and no legal one against Duane; the service on him in YorJe state was void. If it was not, this judgment was still irregular; he should have been ruled to plead; and as no judgment was obtained-against Chahoon, no subsequent scire facias could affect Chahoon, founded on the judgment on this scire facias. In fact the scire facias in 1815 pays no regard to this, and recites the judgment in 1806.
I think the lien of the judgment in 1806, was gone as to this lot, if Chahoon is a purchaser, either mediately or immediately, from Duane, whether Duane sold his equitable interest to Gore, and Gore to Chahoon, or whether Qore conveyed the legal title, ' and he and Duane divided the.purchase money; but the fact that Duane ceased to claim or demand rent, and perhaps other facts would seem evidence of Gore and Chahoon having Duane’s equitable interest. And if the jury should, believe Chahoon stands in the light of a purchaser from Duane, whether of a legal or equitable right, it seems to me the act equally requires that scire facias should be served on him, or the lien of the judgment is gone. If the scire facias in 1811 is still undisposed of, the whole proceedings on the subsequent fi. fa. of 1S15, are, at least as respects Chahoon, null and void, and the sheriff’s sale vested no title against him in J. H. If the verdict and judgment for the defendant included him, he is equally safe.
It seems to me strange to consider Chahoon as still the tenant of Duane after 1807, in opposition to positive proof that he was not, and that Duane did not even allege that he was. The fact whether he was a tenant or a purchaser, is necessary to be ascertained. If a tenant, as he attorned to Gore without the consent of Duane, a scire facias perhaps need not be served on him, bpt if Duane released to Gore, and Chahoon, by his direction, became the tenant of Gore, and afterwards his vendee, the scire facias must have been served on him or the lien was gone. For it is admitted he resided constantly in the bouse, in sight of the courthouse. I think it was necessary that the jury should find the fact whether he was a purchaser or not; if they found he was a purchaser, the lien is gone.
The fate of the act of 1798, on the lien of judgments, is singular. In Young v. Taylor, ah opinion of a single judge, entirely extra-judicial, made a strong impression; but it is entirely an obiter *436 dictum. 'The sheriff’s deed was not acknowledged, and so far from deciding that Young’s lien on the lots was preserved, they recommend further proceedings to bring the matter before the court in -such shape as that his right may be decided. The very point of the construction of this act came before this court, in The Bank of North America v. Fitzsimons, 3 Binn. 342. It is there said nothing can be more plain than this law. That no inconvenience will result from the law, but, on the contrary, it will promote the public Convenience.' The dictum of Judge Yeates was repeated again in Lewis and Smith. But in that case it was impossible to apply it to the matter before the court, for the levies were on personal property.
There have been several cases since, in the last of which it is said expressly the court will not decide; whether an execution will retain the lien of a judgment, except as to the lands on which it is levied.
In Young v. Taylor, the plaintiff had proceeded so irregularly, that the court refused to permit his deed to be acknowledged; there, also, the real plaintiff, the man who managed the suit, is the purchaser. At one time he notifies Chahoon, but obtains no judgment against him. He afterwards issues a scire facias on the judgment of 1806, and takes care not to notify him. He gets his judgment of Duane revived, leaving the suit which was to decide whether Chahoon’s house and lot were liable, undecided. He sells in this uncertainty, and himself purchases for five hundred dollars,' property which rented at ninety dollars per annum ten years before, which had cost fifteen hundred dollars, and which, twelve men on their oaths have said was worth two thousand four hundred dollars. He obtains this monstrous advantage by his own misconduct. For we must suppose if he had tried his scire facias of 1811, and a court and jury had decided that the properly was subject to the lien, it would have sold for twenty times as much as it has been sacrificed for. I am not speaking of a case where a third person purchases at sheriff’s sale; but of a case where the plaintiff or his agent purchased, after having proceeded with such irregularity as to deter prudent men from bidding against him. To make any intendment in favour of such a purchaser, would be to assist him in his oppression. For this reason, also, I think the eause ought to be reheard.
Judgment reversed, and a venire facias de novo awarded.