# Commonwealth *versus* Lelar and others.

Since the act of 14 June, 1846, prescribing a particular remedy upon the official bonds given by sheriffs and their sureties, as well as before the passage of that act—suit may be maintained on the recognizance of a sheriff against him and his sureties, to recover, for misappropriation of the proceeds of a sheriff's sale of real estate.

Where judgment is obtained against one, who was subsequently discharged as an insolvent debtor, but his assignees did not qualify by giving bond, before the issuing of a *scire facias* to revive the judgment, judgment of revival may be entered against the debtor alone; and a sale of the land, by execution on such judgment, passes the title, which existed, in the defendant, at the rendition of the original judgment.

It is not necessary to notify, by *scire facias*, the assignees of an insolvent debtor, who do not qualify by giving bond, before the issuing of the *scire facias* to revive the lien of the judgment.

After the lapse of 17 years, from the discharge of an insolvent debtor, a presumption may arise that his debts have been discharged, and the beneficial interest in his estate, may revest in the insolvent, by way of resulting use, and entitles him to the possession thereof, against the assignee.

A sale by a trustee of an insolvent debtor of real estate, which is bound by a judgment, does not discharge the lien of such judgment.

After the lapse of 17 years from the discharge of an insolvent, without his trustee having qualified, the appointment by the Court of another trustee in his stead, without exhibiting outstanding debts, requiring the interposition of a trustee, is illegal, and the trustee, so appointed, takes no estate in the property of the insolvent.

It may admit of doubt whether a court has power to appoint a trustee of an insolvent debtor, not for the purpose of executing the trust, but in order to raise a party defendant, in a proposed action of partition.

An irregularity, in the issuing of execution on a judgment, cannot be taken advantage of, collaterally.

From Nisi Prius, *Philadelphia.*

The Commonwealth of Pennsylvania, *ex relatione* Alfred Johnson, against Henry Lelar and others. This was a *scire facias* upon the recognizance of sheriff Lelar. It was tried at the Nisi Prius, and a verdict rendered for the plaintiff. It was issued to

recover a sum of money in the hands of Henry Lelar, sheriff of Philadelphia, and to which the relator, the real plaintiff, alledged himself entitled. The fund arose from a sale under a *Venditioni Exponas*, in the case of Paul *vs.* Bower, in which certain real estate subject to ground rent, was sold, the judgment being against the original covenantor to pay the rent, under whom the plaintiff claimed to hold an undivided ninth part in the land, and thereby was entitled to one ninth part of the surplus, after paying the ground rent and costs, in the hands of the sheriff. The land, originally conveyed to Bower, came afterwards (subject to the said ground rent) to one Michael Crouse, who died leaving nine children, who took the land, and of whom Christopher Crouse was one. In 1820, judgment was entered against Christopher Crouse, the subsequent proceedings on which constitute the principal subject of inquiry and review here; subsequently, in January, 1822, he was discharged under the insolvent law, and in 1839, the insolvent trustee sold the land on August 26, 1839, which subsequently was conveyed to John Herman, (all of the conveyances being duly recorded,) who claimed, and who had received the said ninth part of the proceeds, upon allegation of an entire title, superior to that set up by plaintiff. The verdict was for plaintiff for the amount claimed by him.

The proceedings are as follows:

Judgment had been obtained, in the District Court, in favor of Samuel Johnson *vs.* Christopher Crouse, to March term, 1820.— May 2, 1820, judgment for $400 for the payment of $200, &c. *Scire facias* against Crouse alone, to March term, 1825.

*Scire facias*    "    same *vs.* same, to June term, 1829.

June 13, 1829. Judgment.

"    "    "    "    to September term, 1834.

"    "    "    "    to June term, 1839. Exit *July* 1; returned 1st Monday in August. "Made known."

September 2d, 1839, judgment for want of an affidavit of defence.

Samuel Johnson *vs.* Christian Crouse, with notice to terre tenants, September term, 1844. *Scire facias* to revive judgment. Exit August 27th. Made known to defendant and to Horatio B. Pennock, John Herman and R. Wilson Desilver, terre tenants.

September 21, 1844, affidavit of defence filed.

October 5, 1844, rule to shew cause why judgment should not be entered for want of sufficient affidavit of defence.

October 12, 1844, rule absolute as to Christopher Crouse, dismissed as to the other parties.

On the same judgment. A *fieri facias* had been issued to December term, 1829, which was not returned till 1842; then returned, as follows: *Tarde venit,* so answers,

Sept. 10, 1842.    HENRY MORRIS, *Sheriff.*

Other executions were issued on this judgment, and on a writ of *venditioni exponas* to June term, 1846, the real estate of Crouse was sold to Alfred Johnson, the plaintiff in this suit. The interest of Crouse, in the real estate sold, was alledged to be the one ninth part of it.

The original judgment of Johnson *vs.* Crouse, was obtained in 1820. In January, 1822, Crouse was discharged, as an insolvent debtor. Two trustees were appointed by the court, who did not qualify.

In 1838, Pennock petitioned the court of Common Pleas, stating *inter alia*, that Crouse was discharged in 1822, as an insolvent debtor, seized of an undivided ninth part of the real estate in question; that he, Pennock, was the owner of five ninth parts of the same property, and prays the appointment of an assignee upon whom proceedings in partition may be served. Recites Johnson's judgment of March term, 1820. Revived September, 1834, etc.

In February, 1839, Desilver was appointed assignee of the estate of Crouse, and August 3d his security was approved.

The *scire facias* to revive the judgment of Johnson in 1839, was issued July 1, 1839, before the approval of the security above stated.

It was alledged, on the argument, that the judgment of Johnson had not been duly revived, because notice of the writs of *scire facias* had not been given to the assignee of Crouse; the first assignees, however, had not given security, and the security by Desilver was not given till after the *scire facias* to June term, 1839, had issued, as before stated. Notice of the *scire facias* to December term, 1844, was given to the terre tenants.

In December, 1846, certain real estate of Crouse, which had been bound by the original judgment of Johnson, was sold on a judgment obtained on the covenant for the payment of ground rent. It was sold for $6500.

It was alledged, on the part of Johnson, that he should have received from the sheriff, the one ninth part of the nett proceeds of the sale, viz: about $708 44, he being the owner of the undivided ninth part of the premises, as previously purchased by him at sheriff's sale, on the 6th of July, 1846.

The case was ruled at Nisi Prius, reserving the points of law involved.

Assignment of Errors:

1. The action being upon the official recognizance of the sheriff, cannot be maintained.

2. The real plaintiff, Alfred Johnson, had no right to any of the fund, in the hands of the sheriff; the judgment under which he acquired title being in 1829, and this levy being upon an execution issued on that judgment, and not on any subsequent revival.

3. The lien of the plaintiff's judgment upon the land had not been continued, Crouse alone having confessed judgment in 1825, when before that time the land had passed to his assignee, in trust for creditors, and no notice had been given to such assignee.

4. The lien of the plaintiff's judgment against the land did not exist at the time of sale.

5. There were proceedings instituted in the District Court, in which the plaintiff elected his judgment against Crouse, and thus abandoned his judgment against the land.

The case was argued by *H. M. Phillips*, with whom was *T. Sergeant*, for sheriff Lelar.

1. That the object of the recognizance, by the act of 15 April, 1834, is merely the acknowledgment of the bond, and for the purposes of lien; that it cannot be sued, and if it were otherwise, a double lien for the penalty may be obtained against the sureties.

2. That the return made in 1842, of the *fieri facias*, issued in 1829, was illegal.

3. That the lien of the judgment of Samuel Johnson, against the land of Crouse was gone, as it had been conveyed by his assignee in 1839, who was not notified of the writs of *scire facias;* that from the purchaser, at the sale by the assignee, the property had come to John Herman, whose deed was duly recorded.

4. The pendency of the proceedings against the terre tenants, who interposed an affidavit of defence, and taking judgment against Crouse alone, shew plaintiff's election to resort to Crouse's present interest only, and not to that of the terre tenants; that it was equivalent to a voluntary non suit as to them.

*Wheeler*, contra, for Johnson.—He contended that the first assignees of Crouse never had any legal existence, as they never gave security, and were therefore not entitled to notice. That the *scire facias* to June term, 1839, issued before Desilver, the assignee, had given security. That the law presumed that the debts of Crouse, except judgments, were paid, at the end of 14 or 17 years; he was discharged in 1822, and Desilver appointed trustee in 1839. Sailor *vs.* Hertzog, 4 *Wh.* 259; 14 *Serg. & Rawle* 369; Ross *vs.* McJunkin; and in 1844, Pennock, Connell, Desilver and Herman were all served.

The opinion of the Court was delivered by

BELL, J.—The right of the plaintiff to recover any portion of the proceeds of the land, sold by the defendant, as sheriff, depends on the question whether in 1846, when the former purchased a portion of the same land, as the purpart of Christopher Crouse, the judgment recovered, in the year 1820, by Samuel Johnson against Crouse, continued to be a lien on that purpart?

VOL. I.—C.

The persons who in 1822 were nominated assignees of the estate of Crouse, then an insolvent debtor, utterly neglected or re-refused, for a period of seventeen years, to give the required security, or to take a single step in execution of the trust, proposed to be confided to them. It is probable they declined it from the beginning, and it is certain they never entered upon the possession of the insolvent's real estate, or in any way interfered to alter the relations theretofore subsisting between him and it. Under such circumstances, it is going very far indeed, to claim that those who never made themselves parties to the trust were necessary parties, as trustees, to process for preserving an encumbrance on land, of which they knew nothing. It might be asked, how, with propriety, could those be brought in as defendants, who always refused to qualify themselves to act as plaintiffs in any thing relating to the subject of the trust. Park *vs.* Graham, 4 *Serg. & Rawle* 549; Dallam *vs.* Fitler, 6 *W. & S.* 323. But waiving this, and admitting that, by force of the mere nomination, as assignees, they acquired a power over or even an estate in the land; it must be conceded, it was for but a limited and special purpose, which while it remained unexecuted, left an interest in the insolvent, sufficient when coupled with his continued occupancy, to constitute him tenant of the land, within the meaning of the statute, requiring service of writs of *scire facias,* upon terre tenants or occupiers; or rather his whole estate not being divested by operation of law, he so far continued to be owner as sufficiently to subserve the purpose of the statute, which was to give notice to those having a beneficial interest in the encumbered premises; an object much more satisfactorily effected by service on the debtor in possession than on titular trustees. Clark *vs.* Israel, 6 *Bin.* 391; Robbins *vs.* Bellas, 4 *W.* 257; *in re* Dohner's Ap. 1 *Barr* 101. These remarks are also applicable to Desilver, under whom Herman, the plaintiff's real antagonist claims, who though nominated as assignee, in February 1839, did not assume the office until the month of August following, very shortly before the return day of the *scire facias* of that year. As that writ, like those which preceded it, was duly served on Crouse, as defendant and owner, the judgment signed therein, on the 2d day of September, had the effect to continue the lien until September, 1844.

But the plaintiff's claim is founded on the sale of Crouse's purpart to the plaintiff, in the year 1846, by virtue of process issued upon this judgment. To validate this sale, as an instrument passing the title, it is necessary to shew that Johnson's judgment was a lien, covering Crouse's interest, at the moment of sale. For this purpose, we are pointed to the *scire facias* of August 1844, in which judgment was recovered against Crouse alone. Before this however, Desilver, as assignee, had conveyed to Pennock, and Pennock to Herman. Now, if these conveyances divested Crouse's.

estate, in his purpart of the land, before the *scire facias* of 1844 was sued out, it would seem Herman ought not only to be brought in as a party to it, but perhaps a judgment recovered against him, in order to pass the purpart which had been of Crouse. But if no estate passed by Desilver's deed, the land remained to Crouse, and of consequence, the judgment rendered against him, in the last *scire facias*, is conclusive of the plaintiff's right to recover, in this action, what would have been Crouse's share of the proceeds, had there been no judgment against him. This is so, notwithstanding there may have been some irregularity in suing out the several executions, by means of which the sale to the plaintiff was effected, for the irregularity cannot be objected collaterally, even though Crouse were here to take the exception. Nor is there any weight in the suggestion that the prosecution of the successive executions, professing to be founded on the original judgment, operated as a waiver, or abandonment of the intermediate writ of *scire facias*. The presence of the latter process might, perhaps, have furnished a reason for setting aside the former, had the . objection been made by the proper person, and in due time; but I am unacquainted with any principle which accounts the contemporaneous existence of the final process so utterly repugnant to the judicial writs, as to operate to their destruction; indeed, from Jameson's Ap. 6 *Barr* 280, it would seem that both may, sometimes, be necessary. How then, stood Johnson's pretensions, when the sheriff distributed the avails of the land in 1846?

We have seen that down to 1839, a period of seventeen years, no movement was made in execution of the trust, springing from Crouse's insolvency in 1822; nor has any of his creditors moved to enforce its execution. But, in the former year, Pennock, as co-tenant with Crouse, of the land bound by Johnson's judgment, by a petition reciting the judgment and its successive revivals, prayed the appointment of a trustee, in the place of the original assignees, not for the purpose of executing the trust, but in order to raise a party defendant in a proposed action of partition. It might admit of grave doubt, whether the court possesses power to nominate an assignee, simply for such a purpose. But, however this may be, it seems certain that, after the lapse of so long a period as had place here, without proof of remaining outstanding debts, to be discharged by a trustee, the party so appointed takes no interest in the estate. It is a settled principle that, although, by operation of law, the legal estate of an insolvent vests in his assignee, yet as soon as the debts are satisfied, the beneficial 'interest in the undisposed property revests in the insolvent, by way of resulting use, and entitles him to the possession, even against the assignee. In Ross *vs.* McJunkin, 14 *Serg. & Rawle* 364, it was intimated that after fourteen years of silence and inaction, this principle would become active, upon a presumption of

[Commonwealth *v.* Lelar and others.]

payment; and it was so ruled in Sailor *vs.* Hertzog, 4 *Wh.* 266–7, where one, who, *fourteen* years before the bringing of the action, had been a certified insolvent, was permitted to recover the assigned lands, without a formal re-conveyance, which was thought unnecessary. A debtor, said the court, has a resulting interest in the property; that is, all that remains after payment of the debts belongs to him, and after a series of years, he may go on the presumption that they have been paid. Under the operation of this reasonable rule, Crouse, had he been out of possession, might have recovered against his assignees, long before the appointment of Desilver; and, I take it, this could not have been prevented, by shewing Johnson's judgment still unsatisfied. The remedy of the judgment creditor was independent of and superior to any that could have been afforded him by the trustee, since the latter must have sold the land, subject to the incumbrance. A continuance of the trust was, therefore, not needed, for any purpose in connection with the judgment considered simply as a lien on the land, which is the only subject we have to do with, at present. No creditor has attempted to infuse new life into the trust, for any purpose connected with it. Had they done so, and shewn the impropriety of its revival, a very different question would have been presented. But as by lapse of time the trust was *prima facie* expended, and the estate by operation of law revested in the assignor, the appointment of Desilver, for a special purpose, could not again attract *the estate* from the assignor, without at least shewing some necessity for it. This might have been done by exhibiting outstanding debts, requiring the interposition of a trustee, but surely, the mere nomination of Desilver, without even a pretence that the exigency of the trust required it, ought not to be permitted to work an effect so serious as that attributed to it by the defendant. The result is, the last assignee took no estate in the incumbered premises, and consequently, none passed to his alienees. As therefore it is Crouse's estate which was to be affected, the service of the last *scire facias* upon him was sufficient to warrant a binding judgment of revival.

Nor ought Desilver's alienees to complain of this. The petition under which they claim shews notice of this judgment, and in the face of this fact, it is in vain to say that, as to them, the outstanding execution raised a presumption of payment. Besides, the record of a regular series of *scire facias*, and the proceedings had under them, carried notice, if further were required.

What has been said proceeds on the supposition that the last *scire facias* was served on Crouse alone. But, in truth, Desilver and his assignees are also parties to it, with full notice. Upon the concession that they took an interest in the land, it was always in their power to test the continued existence of the judgment, had they chosen to do so. As to them, the suit is still pending,

[Commonwealth *v.* Lelar and others.]

and to say the least of it, the sheriff can scarcely justify parting with the fund to third persons, while the controversy with them remains undetermined. In the absence of counter proof, we must take for granted the validity of the judgment, and its binding effect. Every intendment ought to be made in favor of it, Chahoon *vs.* Hollenback, 16 *Serg. & Rawle* 432. We must not throw unnecessary difficulty in the way of creditors. Dohner's assignees, 1 *Barr* 101.

We do not perceive any force in the suggestion that since the act of 14th June, 1836, prescribing a particular remedy upon the official bonds given by sheriffs and their sureties, no action lies upon the recognizance, acknowledged by that officer, under the act of 15 April, 1834. Before the former statute, the right of an aggrieved party to have a *scire facias sur* recognizance, was never questioned, and I do not see any thing in its enactments, evidencing an intention to take away this right. Certainly there is nothing express, and we would scarcely be warranted in saying an implication arises from the form of suit to be instituted for a breach of the bond, if, indeed, that form is to be confined to the bond. The recognizance and bond are distinct instruments, each affording foundation for acting; but from this, it does not follow that more might be recovered from the obligors and cognitors, in successive actions, than the whole sum provided as a security for the public. Every inconvenience of this sort intimated on the argument, might readily be met by a proper mode of pleading.

Judgment affirmed.