1814.

WILKINS
*v.*
BURR.

---

CLARK and another *against* ISRAEL.

THIS was a *scire facias* to *December* 1812, to revive a judgment entered on the 23d *April* 1811, for fourteen hundred and seventy-two dollars thirteen cents, with interest from the 1st *May* 1810. The defendant pleaded payment, a set off, and a discharge under the insolvent law of 13th *March* 1812.

*Philadelphia,*
*Monday,*
July 25.

A discharge under the insolvent law of 13th *March* 1812, does not disturb the lien of a judgment. The lands of the insolvent, remain after his assignment and discharge, subject as before to proceedings by mortgagees and judgment creditors. If the defendant is in possession, with the permission of his assignees, it is not necessary to serve a *scire facias post annum et diem* upon his assignees.

1814.

CLARK
et al.
v.
ISRAEL.

Upon the trial before *Yeates* J. at a *Nisi Prius* in *February* last, the defendant produced a discharge signed by the commissioners on the 15th *May* 1812, and duly filed in the prothonotary's office: and his counsel contended that the certificate operated as a complete discharge, not only as to his person, and property subsequently acquired, but also as to the lien which the plaintiff had on the real estate of the defendant, held by him at the time of the entry of the original judgment. His honour reserved the point, and a verdict was by consent entered for the plaintiff.

In addition to the point reserved, it was now argued that judgment could not be entered upon the verdict, 1. Because the real estate of the insolvent had passed to his assignees, and they alone had power to sell. 2. Because the assignees should have been made parties to the *scire facias*, as terre-tenants. 3. Because a judgment would make the defendant, and his subsequently acquired property, liable to execution.

*Milnor* for the plaintiff.

*Phillips* and *J. R. Ingersoll* for the defendants.

TILGHMAN C. J. having been prevented by indisposition from hearing the argument, gave no opinion.

YEATES J. It has been contended, that by the third section of the insolvent act in question, 5 *Sm. Laws* 322., the certificate of conformity "shall be construed to discharge "such insolvent from all debts and demands due from him, "or for which he was liable, at the date of such certificate, "or contracted or originating before that time, though pay-"able or liable to be exacted afterwards &c.;" and that the debt, which is the substance, being discharged by operation of law, the judgment grounded thereon, which is the shadow, must be extinguished also.

I profess to give no opinion on the constitutionality of this law, a subject which has lately much agitated the public mind. The counsel on both sides have argued before us, on the ground that it was constitutional. The question is, wha is its meaning?

My mind would require the most clear and unequivocal expressions, before it could be satisfied that the legislature

meant in any instance to take away the vested rights of individuals, secured to them by law. This is seen in the bankrupt laws, wherein it is declared, that a judgment without an execution executed, shall give no preference in the distribution of a bankrupt's effects. The people are bound to know the law, and may guard themselves accordingly. Taking the whole of this third section together, the intention of the legislature appears to be, to shelter the person and property of the insolvent, acquired after his discharge, from the demands of his creditors. " No person so discharged shall be " liable to be arrested or imprisoned for any debt or demand " due from him, or to which he was liable, at the time of " the said discharge &c." In the eleventh section it is declared, " that the assignees appointed by virtue of this act, " shall have power and authority to *redeem mortgages and* " *conditional contracts*, satisfy all judgments &c." Why this classification, unless it was meant to put mortgages, and judgments binding lands, on the same footing, and to draw a line of distinction between them and other debts due from the insolvent. In fact this construction was admitted by the counsel for the defendant.

*Moliere's Lessee* v. *Noe*, 4 *Dall.* 450., was cited, that a purchaser under a sale of land by order of the Orphan's Court, takes it discharged from the lien of judgments. This decision was had under the twenty-first section of the act of 19th *April* 1794, that " no lands sold under such orders, " should be liable in the hands of the purchaser *for the debts* " *of the intestate.*" I heard the argument in that case, and though I was confined to my chamber when the opinion of the Court was delivered, fully concurred therein. I agree, that no inconvenience will result if the Orphan's Court and the administrator do their duty. It will be seen in that case, that this Court *clearly* held, that the proceeds of sale must be applied to the payment in the first place of the *liens* which existed in the life of the intestate, according to their respective priority. If the sale in that instance had been made by the sheriff, prior to the sale by the administrator, there cannot be the smallest doubt, but the purchaser under the judgment and execution would have had a good title.

It has however been urged, that no judgment should be rendered on this verdict, because under the second section

of the law, all the estate real, personal and mixed of the insolvent, is vested in the assignees; and under the eleventh section of the act, they have power to execute deeds for real estate, and to satisfy all judgments; and hence it is concluded that the assignees only can convey the title to a purchaser. I cannot conceive, that the assignees possess the *exclusive* right of selling the lands of such insolvents bound by judgments. Should they sell the lands for the best price that could be procured, and fairly distribute the money arising therefrom according to law, it would certainly do no injury to the judgment creditors; but it will not be forgot, that although administrators give security, this is not required of the assignees, and losses may thereby happen. Besides, shall the judgment creditors wait with the means of enforcing payment in their own hands, until it shall please the assignees to sell the real estate? Why have they in the present instance deferred this sale above two years since the final discharge, with the complete power of selling? It appears to me that the lands of the insolvent, after his final discharge, may be proceeded against by mortgagees and judgment creditors, with as much effect as if he had never taken the benefit of this law.

It has likewise been said that the assignees should have been made parties to this *scire facias* as terre-tenants. To this it has been answered, that the defendant continues in the possession of the house intended to be levied on, through the permission of the curators and assignees under the provisions of the act, and that he only can be deemed the terre-tenant. This question may, if it be thought proper, be agitated at a future day; at present we will not anticipate the decision. We have nothing to do with it at present. Let the purchaser look to his own security and title.

In the last place, it has been objected that the entry of a general judgment on the verdict, may subject the defendant's future acquired property and person to the hazard of an execution; and that we have no power to enter a special judgment. Ordinary remedies would be misapplied in extraordinary cases. I know of no such law as the one in question in the *English* statute book, and therefore no precedent of a judgment is to be sought for in that quarter, which would suit the merits of this suit. I know of but one mode which

can protect the individual rights of the parties, and effectuate the intentions of the legislature, which is, the entry of a judgment on the verdict for the plaintiff, of the lands bound by the original judgment on the 23d of *April* 1811; and such entry in my opinion should be made in this action.

BRACKENRIDGE J. concurred.

Judgment accordingly.