# COURT OF ERRORS AND APPEALS.

## JUNE TERM.

## 1879.

---

JOHN MILLER, executor of TAMAR COOCH, deceased, complainant below, appellant, *v.* JOSEPH W. COOCH, administrator *cum testamento annexo* of WILLIAM COOCH, deceased, and others, defendants below, respondents.

The personal estate of a testator is the primary fund for the payment of his debts and legacies.

In the payment of legacies those of a specific nature are to be paid before general ones.

The real estate is not liable for the payment of either debts or legacies, unless the testator has unequivocally so declared in his will.

In this State all the property of a testator is subject to the payment of his debts, but the real is only to be resorted to for that purpose, even in the case of liens upon it, after the personal estate has been exhausted, which still preserves the rule that the personal estate is the primary fund for the payment of the testator's debts. Of course this is not to be understood as applying to liens which the creditor proceeds to enforce.

The bequest by a testator of all his personal estate has always been held, where there were no expressions in the will that required a different construction, to mean simply the balance of the personal estate that should be left after the payment of his debts and other legal charges, such as those of burial and of administration. And we know of no case in which those words alone have been held to cast the payment of the debts, expenses of administration and legacies upon the realty.

A legacy is only specific when it designates a particular thing or things by specific description, as my bay mare, my gold watch, or my shares of stock in bank, or the like, or mentions some place where the thing can be found, as my bank notes in a certain drawer, or indicates some part of the personal estate, consisting of various articles which can easily be distinguished and set apart from

540

the residue, as all of my personal property in a certain room, house, hundred, county, etc. But where it is of all merely, indicating no locality or more particular specification, it is general, the same as is imported by the words rest and residue.

But when the intention of the testator to create a new fund for the payment of his debts appears plain, that fund must first be resorted to if he has so expressed himself. But before that is taken as a fact, there must be no doubt left on the face of the will; it must plainly appear by it that the testator so meant. And this is not to be settled by conjecture or mere inference, but is to be shown by unequivocal language or expressions contained in the paper itself.

THIS was an appeal from the decree of the chancellor sitting in and for New Castle County, and was heard before Comegys, C. J., and Wootten, Houston, and Wales, Judges, at the last, and was held under advisement until this term of the court.

The case arose in the court below on a bill of complaint filed by the executor of Tamar Cooch, deceased, against the administrator *c. t. a.* of William Cooch, deceased, and the heirs-at-law of the devisees under the last will and testament of the said William Cooch, deceased, her husband, whom she survived, but died before his estate had been settled under it. His will was as follows :

I, William Cooch, of Pencader Hundred, New Castle County and State of Delaware, being of sound disposing mind and memory, do make and declare this to be my last will and testament, hereby revoking all former wills heretofore made by me.

Item 1st. It is my desire and wish that my executor hereinafter named shall pay all of my just debts and funeral expenses as soon after my decease as possible.

Item 2d. I devise, give, and bequeath to my beloved wife, Tamar, all my personal property, and three thousand five hundred dollars in cash out of my real estate as soon as sold by my executor.

Item 3d. I devise, give, and bequeath to Dillon Hutchison the sum of five hundred dollars.

Item 4th. I devise, give, and bequeath to my brothers, Zebulon H. Cooch and Levi G. Cooch, the balance of my estate, to be divided between them share and share alike. It is my desire and wish that my executor hereinafter named shall sell all my real estate at public sale within one year after my decease, and convey to the purchaser or purchasers thereof a good and lawful deed or

deeds for the same. I do hereby nominate and appoint my brother, Levi G. Cooch, to be the executor of this my last will and testament.

In witness whereof I hereunto set my hand and seal this twenty-fourth day of July, A. D. one thousand eight hundred and sixty-six.

It was duly executed, and after his death without issue was duly probated, on the 7th day of June, 1869, in the office of the register of wills in and for the said county, and as his brother, Levi G. Cooch, had died after the making of his will in his lifetime, letters of administration *c. t. a.* were granted thereon to the said Joseph W. Cooch. Afterward Tamar Cooch also died, leaving a last will and testament, which had been duly probated likewise, of which the said John Miller was appointed executor, and who had taken out letters testamentary thereon, and by her said will her interest under the said will of her husband was controlled and duly disposed of, and should come into his hands as her executor.

The bill of complaint further stated that after the death of the testator, William Cooch, his brother, Zebulon H. Cooch, died intestate on the 18th day of December, 1870, leaving an only daughter his heir-at-law, named Caroline, wife of Nathan H. Clark, and the only children and heirs-at-law of his brother, Levi G. Cooch, at the time of his death were Joseph W. Cooch, Helen Cooch, William Cooch, Zebulon Cooch, and Mary B. Cooch, all of whom are still living and are made, together with the said Caroline Clark and Nathan H. Clark, her husband, defendants with the administrator of the said testator in this suit.

The real estate of the testator, however, had not been sold pursuant to his will, but in lieu thereof the said Nathan H. Clark and Caroline Clark, his wife, since the death of her father, Zebulon H. Cooch, had by their indenture of bargain and sale, bearing date the 4th day of February, 1871, for the nominal consideration of one dollar have released and conveyed all their interest in the said real estate to the said children of Levi G. Cooch, deceased, consisting of two tracts in said hundred, one of fifty-eight acres and two roods, with a grist mill thereon, and

the other of twenty-two acres two roods and twenty-five perches. And the said grantees are now in possession of said real estate, receiving the rents, issues, and profits of it, and holding the same as the owners thereof in fee simple, they having without any sale of it, or any part of it, raised, and through the administrator, also one of the owners thereof, the said Joseph W. Cooch, one of the defendants, paid off the said bequest of thirty-five hundred dollars to the widow made payable by the will specifically out of the said real estate. The said real estate was assessed in 1871 at twenty-one thousand dollars, and is conceded to have been worth sixteen thousand dollars over and above all liens imposed thereon by the said testator or existing upon it at his death, and is worth no less at this time.

The said Zebulon H. Cooch, named in the said will, was at the time of the making of it, in 1866, in comfortable pecuniary circumstances, living upon his means, a gentleman of leisure in the city of Paris. At the same time the said Levi G. Cooch was a farmer, also in comfortable pecuniary circumstances.

The administrator *c. t. a.* has settled two testamentary accounts under the said will before the register of wills in this cause, one on the 4th of February, 1871, and the other on the 5th of July, 1872, by which it appears that he has paid:

Funeral expenses, . . . . . . . . . . . . .   $84 66

Testamentary expenses, viz.:

| | | | | |
|---|---|---|---|---|
| Amount paid Register of Wills, . . . . | $32 35 | |
| " " Printing, . . . . . . | 18 50 | |
| " " Clerking, . . . . . . | 30 00 | |
| " " Appraising, etc., . . . . | 4 00 | |
| " " Witness, . . . . . . . | 3 30 | |
| " " Recording, . . . . . . | 9 00 | |
| | | $97 15 |

Amount paid Counsel, . . . . . . . .   $395 00
Commission allowed Administrator by the
   Register, . . . . . . . . . . . .   660 51
                                             —$1,055 51

   Carried forward, . . . . . . .   $1,237 32

Brought forward, . . . . . . . . . . . $1,237 32
Debts proved accounts, . . . . . . . . . . . 1,311 15
Bequest to Mrs. Cooch, payable out of lands, . . . 3,500 00
Taxes, . . . . . . . . . . . . . . . 157 15
Goods taken by the widow at appraisement, . . . 60 00
Balance in hands at last settlement, . . . . . . 339 51

$6,605 13

In said accounts and settlements before the register, the said administrator charges himself with :

1st. The amount of the inventory and appraisement
    of the goods and chattels, . . . . . . . . $1,683 95
2d. Amount of sales in excess of inventory and ap-
    praisement, . . . . . . . . . . . . . . 62 88
3d. Cash collected from various sources, . . . . . 220 67
4th. Dividend on policy, . . . . . . . . . . 29 20
5th. Judgment v. G. P. Whitaker, paid, . . . . . 1,108 43
6th. Amount contributed by the heirs to pay to
    widow the bequest payable out of the real
    estate, . . . . . . . . . . . . . . . 3,500 00

$6,605 13

The complainant as representing and in behalf of the legatees named in the said will of Tamar Cooch, deceased, claims that under the provisions of William Cooch's will his widow, the said Tamar Cooch, was during her lifetime entitled, and he, as the executor of her will since her decease, is entitled to all the personal property which belonged to the said William Cooch at the time of his death, and which passed under his will to his personal representative without diminution for funeral or testamentary expenses or for debts or other legacies, there being ample other property belonging to the estate of the said testator for the payment of all such expenses, debts, and legacies designated in his said will, and ordered to be converted into personalty, or at least that he is entitled to such property or its proceeds, or so much thereof as may be left after the payment of proper funeral and testamentary expenses and debts without

diminution for other legacies or devises, and has so made demand of the said administrator *c. t. a.*, who has refused so to account and settle with this complainant, claiming that he and those whom he represents are entitled to no preference in either of these respects under a proper and just construction of said William Cooch's will, either in equity or at law. And in order that this question might be fairly raised and settled this complainant has on divers occasions applied to the said administrator *c. t. a.* and his counsel, and urged them to seek the direction of a court of equity by a bill of interpleader or otherwise, so that the will might receive the construction of the court and the rights of the respective parties be authoritatively settled under its determination, but they have declined so to do, and therefore your orator comes into court here in order to have this question and his rights, and the rights of those whom he represents, determined in that behalf.

So far as it is necessary to repeat it, the prayer of the bill was that the court would give the just and true construction of the said will of William Cooch, deceased, and direct the defendant, the said administrator *c. t. a.* therein, and particularly: 1st. Whether under the said will the said Tamar, his widow, was or was not entitled to all of the personal property of the said William Cooch at the time of his death which passed under his will to his personal representative for administration without diminution for funeral or testamentary expenses, or for debts or other legacies under the said will, there being ample other property belonging to the estate of the said testator for the payment of all such expenses, debts, and legacies designated in said will and ordered to be converted into personalty ; or 2d. To what extent under a just construction thereof the said Tamar was entitled in her lifetime, and the complainant, as her personal representative since her decease, is entitled. That complainant may have such further and other relief as the nature of the case may require.

The answer of the defendants admitted the allegations of fact contained in the bill of complaint, but denied that under the provisions of William Cooch's will, his widow, Tamar Cooch, was entitled to all the personal property belonging to him at

his death, without diminution for debts and legacies as alleged in the bill of complaint.

And of this opinion was the chancellor, who decreed that according to the true construction of the said will of the said William Cooch the personal property bequeathed to his wife, the said Tamar Cooch, was not by the terms of the said bequest and the operation of law exonerated from the payment of the testator's just debts and testamentary and funeral expenses, but that the said debts and expenses were primarily payable out of the said personal property, and were properly paid out of said fund by the administrator *c. t. a.* of the said William Cooch ; and that only the balance of the said personal property remaining in his hands after the payment of the said debts and funeral and testamentary expenses, to wit, the sum of one hundred and two dollars and six cents with interest thereon, should be paid by the said administrator *c. t. a.* to the said executor of Tamar Cooch, the complainant in the case.

The chancellor read his opinion delivered in the case below as follows :

William Cooch in his last will and testament devised as follows :

ITEM 1st. It is my desire and wish that my executor, hereinafter named, shall pay all my just debts and funeral expenses as soon after my decease as possible.

ITEM 2d. I devise, give, and bequeath to my beloved wife, Tamar, all my personal property, and three thousand five hundred dollars in cash, out of my real estate, as soon as sold by my executor.

ITEM 3d. I devise, give, and bequeath to Dillon Hutchison the sum of five hundred dollars.

ITEM 4th. I devise, give, and bequeath to my brothers, Zebulon H. Cooch and Levi G. Cooch, the balance of my estate, to be divided between them share and share alike.

It is my desire and wish that my executor hereinafter named shall sell all my real estate at public sale within one year after my decease, and convey to the purchaser or purchasers thereof a good and lawful deed or deeds for the same.

The testator then appoints his brother, Levi G. Cooch, executor of his will.

The bill is filed for the purpose of obtaining from the court a construction of the will of William Cooch as to the rights of the respective legatees and devisees named therein; or, perhaps, to speak more properly, to have the rights of the executor of Tamar Cooch, and the rights of those whom he represents, determined by judicial construction. The material portions of the prayer are, " That this court will give the just and true construction of said will of William Cooch, deceased, and direct the defendant, the said administrator *c. t. a.* therein; and particularly: 1st. Whether under the said will, the said Tamar, his widow, was or was not entitled to all of the personal property of the said William Cooch at the time of his death, which passed under his will to his personal representative for administration, without diminution for funeral or testamentary expenses, or for debts or other legacies under the said will, there being ample other property belonging to the estate of said testator for the payment of all such expenses, debts, and legacies designated in said will and ordered to be converted into personalty; or, 2d. To what extent under a just construction thereof the said Tamar was entitled in her lifetime, and the complainant, as her personal representative since her decease, is entitled."

The executor of Tamar Cooch claims that she was entitled under this will to all the personal property of which William Cooch died possessed, or to which he was entitled at the time of his death, without any deduction therefrom on account of funeral and testamentary expenses or on account of the payment of debts and legacies; and to three thousand five hundred dollars out of the proceeds of the sale of the real estate; that by the bequest of *all* of his personal property he meant that there should be no diminution therefrom for any purpose whatever, and that whatever charges his estate might be subjected to in the course of its administration, the proceeds of the sale of the real estate and not his personal property was the primary fund for their payment. The opposite view is maintained by the respondents.

It is a general rule, a settled rule, that the personal estate is the primary fund for the payment of funeral and testamentary expenses, debts, and legacies, and this general rule must in every case be applied unless there appears from the whole, or some

part of the will, that a testator intends his real estate, or its proceeds, either of rents, or moneys raised upon the faith of it, or by sale, or in some other manner shall be charged with their payment; and unless it further appears in like manner that he does not intend that his personal estate shall be charged with their payment. It must satisfactorily appear that he not only intends to charge his real estate or its proceeds, but that he intends to discharge his personal estate from their payment. It was formerly held that this intention must appear from express words in the will. This doctrine is nowhere maintained at the present day. Had it been strictly adhered to and not departed from, such litigation would have been saved, and judicial decisions upon this subject would have been much more uniform and consistent. Courts have used different forms of expression in determining the rule to be applied in the solution of the question of primary liability between the personal and real estate. Some judges have said that the intention to make the real estate the primary fund must appear by implication plain; others by intention clear; others by irresistible conclusion; others, that the mind of the judge must be convinced that he is deciding according to what the testator intended; others, that the evidence of the intention to charge the real estate and to discharge the personalty must be sufficient to satisfy the judicial mind. It was doubtless the intention of the testator in this case that every provision of his will should be carried into effect. He intended that his funeral expenses and debts should be paid; that his wife should have his personal property and three thousand five hundred dollars out of the proceeds of his real estate; that Dillon Hutchison should have five hundred dollars, and that his two brothers should have the balance of his estate; and he intended that his real estate should be sold. He has not in express words said how, or out of what fund, the funeral expenses, debts, and legacies shall be paid. He has not expressly charged either the personal property or the proceeds of his real estate with their payment. He has not by express words exonerated either from their payment. The question to be decided is not whether they shall be paid, but what fund, the personal property or the proceeds of the sale of the real estate, is primarily

liable for their payment. The intention of the testator, if that intention can be collected from his whole will, or from any part of it, must determine this question. There is nothing in this will to indicate the intention of the testator to charge the real estate or the proceeds of its sale with the payment of the funeral expenses and debts unless proof of that intention is afforded by the use of the words *balance of my estate* in the fourth item of his will. There is nothing in the will to show an intention to discharge the personol estate from their payment unless proof of that intention is afforded by the words *all my personal property* in the second item of the will. It will be observed that the testator has not in any manner, or for any purpose, blended his real with his personal estate, but has throughout his will clearly distinguished them. He has not directed his real estate to be sold and made the personal property and the proceeds of the sale of the land a single fund for the payment of his debts, funeral expenses, and legacies, and left the surplus proceeds of the sale of the real estate undisposed of, as in the case of *Sharpley* v. *Townsend*, 4 *Harr*. 337. In the latter case the court held that under its particular circumstances the sale of the real estate was a conversion out and out. In this case it nowhere appears that the testator ordered his real estate to be sold and to be blended with his personalty for any purpose; and he has not left the proceeds of its sale undisposed of, but, to use the words of the will, he has devised, given, and bequeathed to his two brothers the balance of his estate, to be divided between them share and share alike. The personal estate having been before given away in the second item of his will, the word *balance*, in the fourth item, can have reference only to the real estate or to the money arising from the sale of the real estate. The conversion under this will is, therefore, a conversion for the purposes of the will only, and not for all purposes whatever, which would be necessary for the purposes of a conversion out and out. Had the bequest in the second item of the will been *my personal property* instead of *all my personal property*, I presume it would not have been contended that the personal property was exempt from the payment of the debts and funeral expenses.

Do the words "*all* my personal property" have a fuller or

more extensive meaning than the words "my personal prop-
erty"? Do not the latter words mean the same as the for-
mer? Under certain circumstances, the word "all" before
personal property appears to have been considered as of con-
siderable importance, and as showing an intention to bequeath
such property as a whole and not as a residue. In *Viner's
Abridgment, vol.* 8, there is a case in which the testator gave
all his personal property to his wife, and five hundred pounds
out of the sale of the proceeds of his real estate, and devised
*his real estate to trustees to be sold for the payment of his debts
and legacies.* Chancellor Harcourt decided in that case that
the real estate devised for the payment of debts and legacies
was the primary fund for their payment, and remarked that
it was manifest the testator thought that all his·personal
estate was not sufficient for his wife, and therefore he gave
her five hundred pounds out of the proceeds of the sale of
his real estate. It will be observed, however, that in that case
the real estate was expressly devised to trustees to be sold for
the payment of debts and legacies, of which the legacy to the
wife was one. This which, however, would only ordinarily
have made the proceeds of sale auxiliary to the personal estate
for the payment of debts, and not the primary fund for their
payment in exoneration of the personal estate, would to my
mind have been a more satisfactory reason for the decision than
the one assigned.

Mr. Jarman, after reviewing the cases relating to this subject,
remarks : "They authorize the proposition that whenever the per-
sonal estate is bequeathed in terms as a whole and not as a residue,
and the debts, funeral, and testamentary charges *are thrown on the
real estate,* this constitutes the primary fund for their liquidation."
I know of no case, however, where it has been held that the
bequest of personal estate in terms as a whole and not as a resi-
due has been sufficient to make the real estate the primary fund
for the payment of debts and legacies, when those debts and
legacies have not been thrown upon the real estate otherwise
than by the mere bequest of the whole or all of the personalty.
They are not so thrown in this case, unless the intention that
such a result should follow appears from a proper construction

of the words *the balance of my estate,* in the fourth item of the will. Do these words have the effect, when taken in connection with the word "all" in the second item of the will, to throw the debts, legacies, and funeral charges upon the real estate primarily and in exoneration of the personal estate? What are the meaning of those words and to what have they relation. In my opinion, the words "balance of my estate," mean primarily his real estate or the balance of the proceeds of the sale of his real estate after deducting from said proceeds of sale any sum or sums with which those proceeds have antecedently been charged; that the only primary charge upon those proceeds pretermitting, for the present, the question as to the legacy to Dillon Hutchison, is the sum of three thousand five hundred dollars bequeathed to his wife, and that the personal estate being the primary fund for the payment of the funeral expenses and debts, the personal estate must first be exhausted before recourse can be had to this balance. If after payment of the debts, funeral, and testamentary expenses out of the personal estate there should be a deficiency in whole or in part for the payment of the legacy of five hundred dollars, or if from a proper construction of the will the personal estate should not be subject to its payment, and it should appear when that question properly arises between parties who can raise the question that the whole frame and scheme of the will plainly shows that the testator intended the legacy of five hundred dollars to be paid absolutely and at all events (to use the language of the court in the case of *McLaughlin* v. *McLaughlin,* 30 *Barr.* 469), it will be time to determine the liability of the proceeds of the real estate for its payment.

That question, however, is not now before the court. It can only be raised in a proceeding to which the legatee and the devisees of the balance of the estate shall be parties. I decline, however, to enter any decree unless it be for dismissal of the bill, upon two grounds—first, the bill is filed by the executor of a legatee for direction to the administrator *c. t. a.* of the testator how to administer the estate, and not by the administrator asking such direction, and secondly, the bill contains no sufficient prayer for relief.

The parties having agreed that the bill should be amended so as to present a case for final decision, it was not dismissed, and the cause was continued with leave to amend according to the agreement of the parties, to be subsequently filed. Afterward, at the February term, 1877, the bill having been amended, as per agreement filed, and the cause being submitted without further argument,

The chancellor said :

I adhere to the views heretofore expressed by me in respect to the primary liability of the testator's personal estate for the payment of debts, funeral, and testamentary charges. I must, in the language of Sir R. Malins, V. C., in *Powell* v. *Riley*, 12 *Equity Cases* 178, attribute to the testator the knowledge that his personal estate was the primary fund for the payment of his debts. With this knowledge he made his will, and nowhere therein declares, either expressly or by "implication plain," that he means to charge the real estate devised to his brothers with the payment of his debts, or that he means to exonerate his personal property therefrom. In the case of *Powell* v. *Riley*, the vice-chancellor, while holding that in that particular case the bequest to the wife was specific, says : " If the will had stopped after the bequest of all his household goods and furniture, live and dead farming stock, money and securities for money, goods, chattels, and effects, and all other his personal estate, to his wife, for her absolute use and benefit, it would not, of course, have exonerated the personal property from the primary liability to pay debts." It is true, he subsequently remarks, " I know no reason whatever, and I know of no authority that decides that the words ' I give my household furniture' is other than a specific bequest;" and the solicitor for the complainant in this cause, if I understand him aright, was of opinion that the bequest by William Cooch of all his personal property was a specific bequest, and therefore discharged from primary liability to pay his debts. In a case subsequent to the case of *Powell* v. *Riley*, the case of *Fairer* v. *Park*, decided in 1876, *Law Reports, Division* 1, *Chancery*, Nov., 1876, it was held that " a gift by will by a testator to his wife of ' all my

personal property, all sums of money which I may possess, or may be owing to me at the time of my decease, together with all the furniture, farming implements, and other things in the family mansion,' was not specific." In that case Hall, V. C., remarked, " The only question on which I wish to hear any argument is whether there was a specific gift to Agnes Park." After argument the vice-chancellor said : " I am of opinion that upon the true construction of this will there is not a specific gift of 'all sums of money which I may possess, or may be owing to me at the time of my decease, together with all the furniture, farming implements, stocks, and crops belonging to the Asby Hall estate, to the defendant, Agnes Park.'" The dispositions are, first of all, a gift of "all my personal property," and then the words which I have read are thrown in, not for the purpose of making anything specific, but for the purpose of preventing the possibility of a question arising as to the specified things being included under the terms "all my personal property." In the will under consideration the bequest of "all my personal property to my beloved wife, Tamar," is specific in no other sense than as being distinguished from the testator's real estate, or the proceeds of such real estate, and " all his personal property" being given to her was so given subject to that primary liability for the payment of the testator's debts, funeral expenses, and testamentary charges, from which he has not in his will, either by express words or implication plain, relieved it.

The will of the testator must, however, be reasonably interpreted. Having provided that his just debts and funeral expenses should be paid as soon after his decease as possible, and then having given all his personal property and three thousand five hundred dollars out of the proceeds of the sale of his real estate to his wife, there remained nothing out of which to pay the legacy of five hundred dollars subsequently given to Dillon Hutchison except the "balance of his estate," the proceeds of the sale of the real estate after the three thousand five hundred dollars should be deducted. The three thousand five hundred dollars has been paid by the person having the administration of the estate of William Cooch with money advanced by the

devisee of the real estate.    Dillon Hutchison has died since the commencement of this suit, but his administrator is entitled to receive out of what the testator calls the "balance of his estate" the legacy of five hundred dollars, with interest thereon, or such part thereof as has not been paid.    I therefore direct that a decree be drawn for the payment to the executor of Tamar Cooch, by the administrator of William Cooch, deceased, of the balance of the personal estate of said deceased, after paying the just debts, funeral expenses, and testamentary charges appearing on the account filed in this cause, with interest from the time when the same should have been paid, together with the costs in this cause, within three months or attachment.

*Patterson*, for the appellant : The will in question was presented to this court, as it was to the court below, for construction, and was that construction to be determined by artificial rules of law, or by the plain meaning and obvious import of the terms employed by the testator in it ?    The second item of it was as follows : "I devise, give, and bequeath to my beloved wife Tamar all my personal property, and three thousand five hundred dollars in cash out of my real estate as soon as sold by my executor."    The chancellor erred in holding that this bequest of all his personal property to his wife was not specific in any other sense than as it was distinguished from his real estate, or, in other words, from the balance of his estate, for in this case it was that very distinction which constituted it a specific bequest ; because the will provides for the payment of his debts and the other legacies or personal bequests out of his real estate, which is directed to be sold for those purposes.    But with the view which he has taken of the construction to be given to the will, how could he make such a wide distinction between the debts and the bequest of five hundred dollars to Dillon Hutchison, and hold that the latter should be paid out of the real estate, while the former should be paid out of the personal property which he left as such at the time of his decease ?    His real estate was then worth at least sixteen thousand dollars.    His debts and funeral and testamentary expenses amounted in the aggregate to two thousand eight hundred and five dollars and sixty-two cents.

He says there is nothing in the will to indicate the intention of the testator to charge the real estate or the proceeds of the sale of it with the debts and funeral expenses, unless proof of that intention is afforded by the use of the words *balance of my estate* in the fourth item of the will. But is there not a manifest intention indicated in it to exonerate all his personal property from the payment of them for the benefit of his wife? As to the effect of the words *all my personal estate* in a bequest to exonerate it from the payment of the testator's debt in the case of a will like this, he cited 1 *Rop. on Leg.* 476 ; 2 *Jarm. on Wills* 587. There was, however, not only an express exoneration of all his personal property from the payment of his debts, but a clearly implied intention indicated by the testator in the will that they should be paid out of the proceeds of the sale of his real estate. In the first item of the will he says it was his desire and wish that his executor should pay all his just debts and funeral expenses as soon after his decease as possible ; in the second he gives to his wife all his personal property and three thousand five hundred dollars in cash out of his real estate as soon as sold by his executor ; in the third he gives to Dillon Hutchison five hundred dollars ; in the fourth he gives to his brothers, Zebulon H. Cooch and Levi G. Cooch, the balance of his estate, to be divided between them share and share alike, and subjoins to that the following : " It is my desire and wish that my executor hereinafter named shall sell all my real estate at public sale within one year after my decease, and convey to the purchaser or purchasers thereof a good and lawful deed or deeds for the same ;" and, in conclusion, nominates and appoints his brother, Levi G. Cooch, the executor of it. The will was brief and concise in its terms, and he evidently desired and contemplated that everything to be done under it should be done as soon after his decease as possible, and particularly that all his real estate should be sold at public sale within the brief period of one year thereafter. And why was he thus particular that it should be sold in so short a time? He doubtless knew that his personal estate would be primarily liable for his debts, and that the debts of a testator must always be paid before any legacies can be, and inasmuch as he had given all his personal property

to his wife, according to his own intention and his own under-
standing of his will, he was thus particular to provide a sub-
stituted fund for the payment of his debts by the sale of his
real estate within the time limited, and which was evidently his
first, if it was not his only, reason for it, as no time was limited
by him in it for the payment of the legacy out of the real estate
to his wife, or for the payment of the legacy of five hundred
dollars to Dillon Hutchison.   Did not that provision of the will
therefore clearly import and imply that both the intention and
the understanding of it by the testator was that all his personal
property, that is to say, all his goods and chattels, rights and
credits, should become the absolute property of his wife upon his
death, and that all the debts and liabilities both of himself and
his estate in the settlement of it should in lieu thereof be paid
out of the proceeds of the sale of his real estate ?   It was this
consideration and the further and still larger provision which he
wished to make for his wife of three thousand five hundred
dollars in cash, that evidently induced him to direct the sale of
his real estate, since he could not provide for her as he wished
without doing it.   *Powell* v. *Riley,* 12 *Equity Cases, Law Rep.*
175.

A bequest of all one's personal property by a testator having
realty in itself necessarily implies a throwing of his debts upon the
realty, and a simultaneous order for the sale of such real estate
and its conversion into money by the executor is a contem-
porary provision by the testator for meeting such debts and other
pecuniary legacies. 1 *Sto. Eq. Jur.,* secs. 572, 573 ; 2 *Jarm. on
Wills* 587.   A gift of all the personalty when there remain
real assets sufficient to pay debts and other liabilities is in itself
in equity a discharge of the personal estate and a charge on the
realty.   *Kightley* v. *Kightley,* 2 *Ves. Jr.* 329 ; 1 *Sto. Eq. Jur.,* secs.
558, 571.   In the distribution of assets the court always applies
those not specifically given to any one before those that are
specifically given.   3 *Ves. Jr.* 552.   And courts will subject lands
to legacies *inter alia,* first, when they are converted into per-
sonalty, or out and out for general purposes ; secondly, when it
is a provision for a wife or child ; and thirdly, when the words
of the testator would charge it with debts in England.   3 *Ves.*

*Jr.* 551 ; 4 *Harr.* 337 ; 1 *Ves. Sr.* 499 ; *Trott* v. *Vernon,* 2 *Vermt.* 708; *Pree. Ch.* 430 ; 2 *Ves. Jr.* 330 ; 3 *Ves. Jr.* 378 ; 2 *Ves. Sr.* 313. A court of equity will so marshal assets that so far as possible the whole will may take effect and all the legatees be paid. *Masters* v. *Masters,* 1 *Pr. Wms.* 422. The proceeds of realty by the conversion into personalty lose their character of realty and are liable to debts and legacies without any express provision ; and where a testator combines real with personal generally, the real is subject to all the burdens of the personal. *Kidney* v. *Coussmaker,* 1 *Ves. Jr.* 444 ; 2 *Binn.* 531; 6 *Binn.* 394. Under a devise of lands to be sold to pay debts and funeral expenses the personal estate was exempted without express words upon the evident intention. *Benton* v. *Knowlton,* 3 *Ves.* 107. To exempt the personal estate from the payment of the debts, the intention may be collected from the whole will, and need not be *in totidem verbis. Tait* v. *Ld. Northwick,* 4 *Ves.* 824. If the intention of the testator to exonerate the personality from the payment of debts be evident, it must be exonerated ; and such an intent to exonerate it may be found not only in the manner in which the personal estate is given, but also in the manner in which the real estate is given. *Webb* v. *Jones,* 2 *Bro. Ch.* 60 ; *Hale* v. *Cox,* 3 *Bro. Ch.* 322 ; *Waring* v. *Ward,* 5 *Ves.* 670 ; 1 *Sto. Eq. Jur.,* secs. 571, 574 ; 2 *Mylne & Keene* 49 ; *Hancox* v. *Abbey,* 11 *Ves.* 186. To exonerate personal estate from the payment of debts, there must appear on the face of the whole will a manifest intention to that effect. *Driver* v. *Ferrand,* 1 *Russ. & Myl.* 681 ; *Greene* v. *Greene,* 4 *Madd. Ch.* 148. Equity will charge the real estate with debts in order to enlarge the fund for the payment of the legacies as well as the debts, whether the legacies be specific or pecuniary, provided they be not residuary. 2 *Pr. Wms.* 190, 330, 335. And when the personal estate is given in a will as a specific legacy, it shall not be applied in exoneration of the real estate. *Walker* v. *Jackson,* 2 *Atk.* 624 ; 1 *Wil.* 24. A specific bequest is merely the severance of that particular property from the great body of the estate and the specific gift of it to the legatee. 1 *Rop. on Leg.* 185, 186. A gift of all a testator's personal property as a specific bequest, there being real estate out of which the debts may be

paid, operates to exonerate the personal estate therefrom. *Mitchell* v. *Mitchell*, 5 *Mad. Ch.* 69; *Greene* v. *Greene*, 4 *Mad. Ch.* 148; 1 *S. & L.* 544; 1 *Rop. on Leg.* 479. In the case of *Powell* v. *Riley*, *Law Reports*, 12 *Eq. Cases* 175, decided in 1871, before Sir R. Malins, V. C., where a testator had bequeathed all his household goods and furniture, farming stock, moneys, goods, chattels and effects, and all other of his personal estate to his wife absolutely, and then devised a freehold estate for sale and payment of his debts and the surplus to his wife, and then devised another freehold estate to his wife absolutely, and other estates to her for life with remainders over, the freehold estate devised for the payment of the debts was insufficient for the purpose. It was held that the bequest of the personal estate to the wife was specific, and that such bequest and the freehold estate specifically devised for the payment of them must contribute ratably for the payment of so much of the debts as the said freehold estate was insufficient to pay. And in so ruling the V. C. cites without disapproval the cases of *Greene* v. *Greene*, 4 *Madd.* 148; *Mitchell* v. *Mitchell*, 5 *Madd.* 69; *Lance* v. *Aglionby*, 25 *Beav.* 65; *Gibbertson* v. *Gibbertson*, 34 *Beav.* 354; and distinguishes the case before him from those of *Taylor* v. *Taylor*, 6 *Sim.* 246; *Tower* v. *Ld. Rosseaux*, 18 *Ves.* 132; and from that class of cases.

There being in this case a clear exoneration of the personal estate from its ordinary and primary liability for the payment of the debts, legacies, funeral, and testamentary expenses of the testator by his express declaration that his wife should have "all his personal property," and by his express direction for the conversion of all his real estate into money as a substituted fund for it for the payment of his debts, other legacies, funeral, and testamentary expenses, and only the balance of which fund was devised or bequeathed over, there could be no pretense and in fact no ground for the application of what might in ordinary cases be the rule in equity, and which in general is the same as it is at law. 1 *Cor. Ch. Ca.* 254; *Booth* v. *Blundell*, 1 *Mer.* 228; *S. C.*, 19 *Ves.* 494; 1 *Sto. Eq. Jur.*, secs. 572, 573; *Law Reports*, 20 *Eq. Cases* 304; 42 *Barb.* 43.

Finally, the desire of the testator expressed in his will, that

his executor should within one year after his decease sell and convey all his real estate, was a conversion of it "out and out," and the proceeds are applicable to the pecuniary legacies. And as all his personal property as such is specifically bequeathed, his debts, legacies, funeral, and testamentary expenses are thrown upon the personal fund thence arising out of such out and out conversion of the real estate. *Sharpley and Wife* v. *Forwood's Executor*, 4 *Harr.* 336 ; 2 *Pr. Wms.* 190 ; *Greville* v. *Brown*, *House of Lord's Cases* 688 ; 2 *Jarm. on Wills* 762 ; *Morris* v. *Morris' Executor*, 4 *Houst.* 414. In that case the sale of his real estate under the will of the testator was considered by the court to be an out and out conversion of it. There have been cases in which the real and personal estates have been administered *pari passu* when the testator has directed his real estate to be sold, and mixed the proceeds and his personal estate in one common fund charged either with debts, legacies, or annuities. *O'Hara on Wills* 224, and cases cited ; *Powell* v. *Riley*, *Law Reports*, 12 *Eq. Cases* 175. And if the simple blending of the real and personal estates for joint administration subjects the mingled funds to the payment of debts and legacies, *a fortiori* does the conversion out and out of the realty into personalty, with a previous specific bequest by the testator of all his personal property to his beloved wife, so subject the fund thus arising.

*Gray*, for the respondents : The question was a single and simple one, and was not difficult of solution. The personal estate is the primary fund for the payment of debts even when the real estate is charged with them. Now, when there are no express words or directions in the will charging the real estate with the payment of the debts, what is sufficient to show a clear intention or a demonstration plain, or, in the words of Lord Eldon, what is tantamount to it, that the testator meant to exempt his personal and to charge his real estate with the payment of his debts ? By judicial construction legacies were often charged on the real estate when the debts would not be.

It was a well-established and elementary rule in the administration of assets both in this country and in England that the

personal estate is the primary fund for the payment of debts and legacies. 4 *Kent's Com.* 420 ; 2 *Jarm. on Wills* 546 ; 1 *Sto. Eq. Jur.*, sec. 571 ; 2 *Vern.* 248 ; *Ram. on Assets, c.* 3, sec. 5 ; 1 *Redf. on Wills* 275, 276 ; *Hill on Trustees* 350, 351 ; *Bispham's Equity* 321 ; *Snell's Princ. of Eq.* 221 ; *Smith's Man. of Eq.* 270. To exempt the personal estate of the testator from this primary liability there must be a " clear intention " expressed by or " a demonstration plain " of such intention gathered from the whole will both to exonerate the personal estate and also to charge the real estate or some portion of it. 1 *Pr. Wms.* 291 ; 2 *Vern.* 183 ; 2 *Vern.* 43 ; *Walker* v. *Jackson,* 2 *Atk.* 624 ; 1 *Brown Ch. Ca.* 454, *in note ;* 3 *Ves. Jr.* 103, 107, 111 ; 4 *Ves.* 816 ; 5 *Ves.* 540 ; 6 *Ves.* 567 ; 9 *Ves.* 447 ; 2 *Jarm. on Wills* 575, 576 ; 1 *Mer.* 192 ; 1 *Mylne & K.* 396 ; 10 *Beav.* 453 ; *Powell* v. *Riley, Law Reports,* 12 *Eq. Cases* 175 ; *Lupton* v. *Lupton,* 2 *Johns. Ch.* 614 ; 1 *Paige* 188 ; 14 *Mass.* 83 ; 6 *Cow.* 333 ; 1 *Barb. Ch.* 375 ; *Hawk. on Wills, Am. Notes* 287 ; 1 *Ld. Ca. in Eq., Am. Notes* 646, 673 ; 2 *Ibid.* 92, 110.

The bequest of " all my personal property " is not sufficient to exempt the personal estate unless another fund has been expressly provided for the payment of the debts and the intention to exempt is apparent from the will. A specific bequest is a bequest of a specified thing, or an ascertained or defined part or portion of the personal estate separated and distinguished from the mass of it. A bequest of all one's personal estate is not technically a specific bequest, and in equity such a bequest is only called specific for purposes of construction and where the intention is otherwise expressed in the will that other property than the personalty shall bear the charges. That is to say, in such cases such a bequest is sometimes called specific, as distinguished from the real estate. *Howe* v. *Earl of Dartmouth,* 7 *Ves.* 137 ; *Walker's Estate,* 3 *Rawle* 229 ; *Woodward's Estate,* 31 *Cal.* 595, 602 ; *Redf. on Wills* 475 ; 2 *Wm.'s Exrs.* 1158, 1172 ; *Gross* v. *McMullen,* 2 *Del. Ch. Rep.* 227 ; 1 *Rop. on Leg.* 184, 186 ; 2 *Spence Eq. Jur.* 336, 341 ; *Ward on Leg.* (18 *Law Libr.* 10) ; *Fairer* v. *Park, Law Reports,* 3 *Ch. Div.* 309.

The desire of the testator that his real estate should be sold as stated in it, taken together with all the provisions of his will,

did not make it an "out and out" conversion, or indicate an intention to charge on the land the debts and legacies. *McLeland* v. *Shaw*, 2 *Sch. & Lef.* 544; *Acroyd* v. *Smithson*, 1 *L. C. in Eq. and Am. Notes* 904; 1 *Jarm. on Wills* 473. The evident purpose of the direction was that the three thousand five hundred dollars bequeathed to the wife might be raised and the balance be divided between the brothers. The will does not blend but studiously keeps apart the real and personal estates. Then we have here a bequest to the wife of all the personalty subject to the burden of the debts and legacies which the law throws on it, and from which the testator has not seen fit to exempt it, and a devise to her of three thousand five hundred dollars out of the real estate, and then the balance of his estate to his two brothers. What was the balance? Clearly the balance of the real estate after the payment of the three thousand five hundred dollars expressly charged upon and taken out of it; because the whole personal estate, subject as above, had been disposed of, and therefore the word balance can have no other relation.

Finally, it is submitted that no case in England or in this country has ever departed from the general rule which he had indicated and exonerated the personal estate from its primary liability, unless there has been in addition to this disposition of the personal a devise of real estate to pay debts, or some charge upon or dedication of real estate for that purpose, or express exemption of the personal estate by unequivocal language, or, as it is expressed by Mr. Smith in his *Manual of Equity* 272: "If the real estate is directed to be sold for the payment of debts and the personal estate is expressly bequeathed to legatees, then the personal estate will be exonerated by necessary implication. But neither of these circumstances apart from the other, and from circumstances affording implication of intention, is sufficient indication of an intention to exonerate the personal estate."

The foregoing applies *a fortiori* to the case of legacies, which are always presumptively payable out of the personalty, and if there prove a deficiency for the payment of debts and legacies the legacies must abate, unless they are charged on the real estate. And real estate is never so charged unless the intention

of the testator so to charge it is either expressly declared or fairly and satisfactorily to be inferred from the language of the will. And especially is this true when the legacy is sought to be exclusively charged on the real estate in exoneration of the personal. 2 *Redf. on Wills*, ch. 1, sec. 15.

*Comegys, C. J.*, delivered the following opinion : The controversy between the parties in this case arose out of the will of William Cooch (the husband of the appellant's testatrix) which is in these words :

" In the name of God, Amen.   I, William Cooch, of Pencador Hundred, New Castle County, and State of Delaware, being of sound and disposing mind and memory, do make and declare this to be my last will and testament, hereby revoking all former wills heretofore made by me.

" ITEM 1ST. It is my desire and wish that my executor hereafter named shall pay all my just debts and funeral expenses as soon after my decease as possible.

"ITEM 2D. I give, devise, and bequeath to my beloved wife Tamar all my personal property and three thousand five hundred dollars in cash out of my real estate, as soon as sold by my executor.

" ITEM 3D. I devise, give, and bequeath to Dillon Hutchison the sum of five hundred dollars.

" ITEM 4TH. I devise, give, and bequeath to my brothers, Zebulon H. Cooch and Levi G. Cooch, the balance of my estate to be divided between them, share and share alike.

"It is my desire and wish that my executor hereinafter named shall sell all my real estate at public sale within one year after my decease, and convey to the purchaser or purchasers thereof a good and lawful deed or deeds for the same.

" I do hereby nominate and appoint my brother, Levi G. Cooch, to be my executor of this my last will and testament.

" In witness whereof," etc.

The appellant conceived his testatrix to be entitled under this will to all the personal estate of her husband without any deduction therefrom whatsoever ; and the respondents not admitting such claim, the bill which forms part of the record before

us was brought to determine that question. The case presented by it having been so conducted on both sides as to require of the chancellor a decision of the matter in controversy, he made it on the 21st day of February last, denying the claim of the complainant in his court. From that decision this appeal was taken, and we have been favored by the chancellor, in the opinion expressed by him in the cause, and now read to us, with the reason or grounds upon which he based his decree. Such reasons are full and lucid; and we proceed to give our views of the law by which this court is to decide whether they are sufficient or not in our judgment.

There are certain well-established and reasonable rules which serve as a sure guide to courts in the decision of such questions as that presented by the record in this case, and which are by no means new, but are so old as to have become venerable landmarks of equity decisions in cases of this nature under wills. They are those for the administration of the estates of all testators, and have so long prevailed as to be entitled to the appellation of maxims. They are as follows :

1st. The personal estate of a testator is the primary fund for the payment of his debts and of such legacies as he may choose to give. 2d. In the payment of legacies those of a specific nature are to be paid before general ones. 3d. The real estate is not liable for the payment of either debts or legacies, unless the testator has unequivocally so declared in his will.

With respect to this rule we may now say, as we shall repeat hereafter, that in this State all the property of a testator is subject to the payment of his debts, but the real is only to be resorted to for that purpose, even in the case of liens upon it, after and not until the personal estate has been exhausted, which still preserves the rule that the personal estate is the primary fund for the payment of a testator's debts. Of course, we are not to be understood as speaking of liens which the creditor proceeds to enforce.

We did not understand the learned solicitor for Tamar Cooch's executor to make any contention with the respondents upon this view of the law, but he did insist, and exhibited his usual industry in collecting and citing authorities to sustain his view,

that according to the true legal construction of the will of her husband, her executor is entitled to the whole personal estate of the testator, and that, by force of the terms used by him, all his debts, funeral charges, and expenses of administration are thrown upon the proceeds of the sale of the real estate, which is substituted in lieu of the personal for the payment and discharge of them ; and he founds or places his argument or contention upon the express words of the second item of the testator's will : " I give, devise, and bequeath to my beloved wife Tamar all my personal property, and three thousand five hundred dollars in cash out of my real estate as soon as sold by my executor."

If the question presented by the solicitor for the appellant had never been decided, we might possibly take the view of it submitted by him and conclude that the chancellor erred, and that the appellant could claim the whole personalty of the testator, and that such claim should be allowed ; but such question has been passed upon and determined over and over again by courts of equity, whose concern it is chiefly to interpret wills ; and never in cases having no special features more than this case has, has it been decided otherwise than that the personal estate must first be applied to the payment of debts before resort can be had to the real estate.   The very words used in this case, " all my personal estate," have, in the numerous instances produced by the learned solicitor for the appellees in his forcible argument in their behalf, undergone the most critical and exhaustive examination that minds of the highest order of legal acumen could give to them, and they have always (where there were no expressions in the will that required a different construction) been held to mean simply, the balance of the personal estate that should be left after the payment of the debts of the testator and other legal charges, such as those of burial and of administration.   We are not aware of any cases in contravention of this view, or that would justify us, as a court of review, in departing from the old accustomed pathway of the law.   In looking through this whole case, with the will of William Cooch and all its provisions or clauses in our mind, we do not see how we can do otherwise than confirm and establish the chancellor's decree.

A case in some respects similar to the present (though there

were many different circumstances or facts in it) came before this court and was decided at the June term, 1872. It was that of *Morris et al.* v. *Morris' Executor,* iv. *Houston* 414, involving the construction of Elijah Morris' will. While the expression in it is not the same exactly as that in Cooch's will, yet the question was so much the same that the court felt called upon and properly to express its opinion in language involving the very considerations this case requires. His Honor, Judge Wootten, in the judgment of the court then declared, and speaking the sense of all its members, said the import of the words " balance of my whole estate, after deducting the aforesaid legacies," being in question, " this cannot mean the whole original estate, but it is the residue remaining after the payment of the debts ; that residue is what constitutes a man's estate ; and when we speak of our own or another's estate, we mean that which remains clear for distribution after the payment of debts. Whatever is necessary for the payment of a deceased man's debts belongs to his creditors and cannot properly be considered any part of his estate for distribution, and especially when we apply the act of distribution, for no matter how much property he may have in possession, if it is not more than sufficient to pay his debts he has no distributive estate. This is true not only in a common sense view but in legal contemplation." We not only feel ourselves bound by the words of the court spoken by its organ for that case, but independently we decide that there is nothing in the will of William Cooch that would justify us in reversing the decree of the chancellor, which, to say nothing of its sufficient reasoning, is strictly in accord with the law as we take it to be.

In this case there is no question between legatees ; it is simply one between the devisees in effect of the real estate and the legatee of the personal ; and we have been unable to find any case, nor has the learned solicitor for the appellant furnished us with any, which decides that the words, all my personal estate, in a will like that before us, have been held to cast the payment of debts, expenses of administration, and legacies upon the realty. Much stress was laid by him upon the fact (which he assumed) that the bequest to the widow was specific, but we do not agree with him that it was specific in any legal sense although it was of

all, etc.   A legacy is only specific when it designates a particular thing or things by specific description, as my bay mare, my gold watch, my shares of stock in such a bank, or the like; or mentions some place where the thing itself can be found, as my bank notes in a certain drawer; or indicates some part of the personal estate consisting of various articles which can be easily distinguished and set apart from the residue, as all my personal property in a certain room, house, hundred, county, etc.   Cases of a similar kind will be found referred to in *Part II of Redfield on Wills, at page* 475; where will also be found authority for the principle that a bequest of all a man's personal property is not a specific legacy.   Where it is of all merely, indicating no lo-cality or more particular specification, it is general, the same as is imported by the words rest and residue, because such word means what every testatator must be taken to know—the balance after payment of debts, etc.—the law being that the personal estate must first be exhausted before resort can be had for such payment to the realty.   Every testator is presumed to know the law with respect to the liability of his estate for his debts, and, consequently, to make disposition of it in accordance with such knowledge.   Therefore it is that where a testator even uses such sweeping and apparently conclusive words in disposing of his personalty as all my personal estate, the law still holds that he only meant such portion of it as should be left after taking from it all that it was liable to, either as matter of legal responsibility for debts, funeral expenses, and charges of administration, or on account of some further deduction which the provisions of his will requires—for example, a specific legacy. The authorities are abundant upon this point, and were fully laid before us in the argument in June last : it is unnecessary to recite them here.   And further, there is in our opinion no warrant for the position assumed by the learned solicitor for the appellant that this bequest is specific.   We have before given examples of specific legacies ; we now refer to authorities in like cases of specification.   *Sayer* v. *Sayer,* 2 *Vern.* 688 ; *Prec. Ch.* 392 ; *S. C.,* 5 *Ves.* 150, 156 ; *Green* v. *Symonds,* 1 *Bro. C. C.* 159, *in notes; Moore* v. *Moore, Ibid.* 127 ; *Gayre* v. *Gayre,* 2 *Vern.* 538 ; *Shaftsbury* v. *Shaftsbury, Ibid.* 747 ; *Laud* v. *Devaynes,* 4 *Bro. C.*

*C.* 537 ; *Clark* v. *Butler,* 1 *Mer.* 304. The principle is the severance of the particular property from the great body of the estate and the specific gift of it to the legatee. 1 *Roper on Leg.* 243. Where there are no such restrictive expressions a legacy of personal estate generally will be general and not specific; and even the circumstance that the real and personal estates are blended together will make no difference, although as to the former the devise must necessarily be specific. *Ibid.; 2 Wms. on Exrs.* 849.

But, of course, the case is different when a testator exonerates his personal estate from the payment of his debts and casts that burden upon his realty. Whenever that occurs, the primary liability is transferred from the personal and thrown upon the real, and the latter is the source to which the executor must first apply. There is no doubt of that. When the intention of a testator to create a new fund for the payment of his debts appears plain, that fund must first be resorted to if he has so expressed himself. But before that is taken as a fact there must be no doubt left upon the face of the will; it must plainly appear by it that the testator so meant. This is not to be settled by conjecture or mere inference, but is to be shown by unequivocal language or expressions contained in the paper itself. There must be something the courts will recognize as sufficient for that purpose to justify them in departing from the old established certain rule that the primary fund for payment of debts is a testator's personal estate. And our system of settlement of estates under which all a man's property, as well real as personal, is responsible for his debts, does not affect the rule; for the primary liability is still on the latter, and there remains until it is exhausted. In England the real estate was not liable for simple contract debts at all unless made so by a testator ; but here it has always been otherwise, and the law as uniform as it is now. But notwithstanding the difference, the first fund to be taken has always been the personal, the real being merely auxiliary or secondary.

Now, in looking through the will that forms part of the record before us, we do not find any clause, word, or expression that would allow us to depart (if we were inclined to do

so) from the established line of decisions upon questions such as are by that record presented to us. There is certainly nothing said about exempting the personal estate from the payment of the testator's debts, nor is any language used that can fairly be construed as favoring the notion of such an intent. There is not even any charge of the real estate with them, though that by itself would mean nothing more than that they should be paid at all events. Nor does the testator direct that, to insure the payment of his debts, his real estate should be turned into money and made part of the personal. If he had gone as far as that even, still the first fund to be taken would be personalty; as, by a well-known rule, the residue of such real estate after such charge upon or with respect to it had been liquidated would descend to the heir or pass to the devisee *qua* realty, he having the right to redeem it from sale and take it as heir or devisee, according as it may have been undevised or devised.

But, in reality, the will itself negatives the idea that the land of William Cooch was devoted by him as the first fund for the payment of his debts. The language of the first item is that the executor shall pay all the just debts and funeral expenses of the testator as soon after his decease as possible; and in the second paragraph of the fourth item he expresses his desire and wish that his real estate shall be sold within a year from the time of his death, thus allowing the executor a full year to find an advantageous period to offer his land for sale. If anything could be wanting to furnish us with assurance that the conclusion we are about to announce is the correct one, these clauses would be sufficient to do it. The testator evidently contemplated that his personal estate should be at once, in the usual course, converted into money to satisfy his creditors, and his land in a reasonable time to raise the money to be paid out of it.

The question is: Did William Cooch by his will intend that his real estate should be resorted to before his personal in the settlement of his estate? As we do not find in that will any language that requires of us to say that he did, the bequest to his wife being a general and not a specific legacy, and that bequest alone being the source to which we have been referred and must resort for such a conclusion, and the two clauses of the

will we have just referred to being, as we think, at variance with the idea of substitution, we are of opinion and decide that the decree of the chancellor in the court below was right and should be affirmed.

*Wales, J.:* The general rule is well settled that in the absence of express words or manifest intent of the testator, his personal estate is primarily liable for the payment of his debts. *Duke of Ancaster* v. *Mayer*, 1 *Bro. C. C.* 454 ; *Samwell* v. *Wake, Ibid.* 145 ; *Walker* v. *Jackson*, 2 *Atk.* 625 ; *Tait* v. *Lord Northwick*, 4 *Ves.* 824. The doctrine is clearly stated by Sir William Grant in *Hancox* v. *Abbey*, 11 *Ves.* 186, as being perfectly established, that in order to exonerate the personal estate there must be either express words or a plain intention. Precise and specific words of exemption are not necessary, but it is sufficient if the intention can be collected from the whole will to give the personal estate exemption from the debts. Mr. Jarman, in his treatise on wills, after a full discussion of the authorities, remarks : " These cases seem to authorize the proposition that whenever the personal estate is bequeathed in terms as a whole, and not as a residue, and the debts, funeral, and testamentary charges are thrown on the real estate, this constitutes the primary fund for their liquidation." 2 *Jarman* 586. This rule and the principles on which it is founded have been fully recognized and accepted by the courts in this country. 1 *Story's Eq. Jur., sec.* 572–3 ; *Lupton* v. *Lupton*, 2 *Johns. Ch.* 623 ; *Walker's Estate*, 3 *Rawle* 229. In England real estate is not liable for the payment of simple contract debts. Here that estate is subject to the demands of all the creditors of the deceased, but not until the personal estate has been exhausted, when it becomes the auxiliary fund for the payment of debts. Hence the doctrine of the English courts of equity has been adopted, that not only must the testator charge his lands with the payment of his debts, but must also show his intention to exempt the personalty. If the personal estate has been specifically bequeathed, and the lands directed to be sold for the payment of debts, the personal is held to be exempted by necessary implication. But the testator is always presumed to act upon the legal doctrine that the personal

estate is the natural and primary fund for the payment of all debts until he shows some other distinct or unequivocal intention. In *Lupton* v. *Lupton*, Chancellor Kent states the rule broadly and as not admitting of dispute, that the real estate is not as of course charged with payment of legacies. It is never charged unless the testator intended it should be, and that intention must be either expressly declared or fairly and satisfactorily inferred from the language and dispositions of the will. It is not sufficient that debts or legacies are directed to be paid—that alone does not create the charge—but they must be directed to be first or *previously* paid, or the devise declared to be made *after* they are paid. Where there is an express bequest of all the testator's personal estate (with or without an enumeration of particular articles) and the will also contains a charge of debts upon the real estate, these facts have sometimes been held to favor the exemption of the personalty. But the position is nowhere sustained that a specific bequest of the personal estate, *without* a charge on the lands for the payment of debts, will exonerate the former. *Hill on Trustees* 352 ; 1 *L. C. in Eq.* 918.

Applying these rules of construction to the interpretation of Mr. Cooch's will, in which are no express words of exemption, resort must be had to the intention of the testator in order to ascertain what was his wish in respect to the payment of his debts. The first item contains the general and usual direction to his executor to pay his debts and funeral expenses. By the second he bequeaths to his wife " all my personal property and three thousand five hundred dollars in cash out of my real estate as soon as sold by my executor." By the third he gives to D. Hutchison five hundred dollars. By the fourth he gives to his brothers " the balance of my estate to be divided between them, share and share alike." Finally, he empowers his executor to sell his real estate at public sale within one year after his decease. The question is, What does the testator mean by " the balance of my estate "? Do these words signify what may remain or be left after all the personal property has been given to the wife, and the debts and legacy to Hutchison have been paid out of the proceeds of the sale of the land ? And is the inference plain from the context of the whole will that the

intention is to cast the burden of the debts upon the real estate? It would be begging the question to say that the inquiry suggests a doubt, and there is therefore no plain declaration or manifest intent to change the legal order of payment. It cannot be denied that in the expressions and terms of this will there is room for conjecture that the testator may have desired to leave to his wife all his personal property free and discharged from the payment of his debts, but there is no plain declaration or manifest intent to that effect. He neither discharges the personal nor charges the real estate, and he is, in the language of Judge Story, presumed to act upon the legal doctrine that his personal estate is the natural and primary fund for the payment of his debts until some other distinct and unequivocal intention be shown. The object in selling the real estate appears to have been to secure the cash payment of thirty-five hundred dollars to his wife, and the division of "the balance" of the proceeds of such sale between his two brothers. This was the purpose of the conversion of the real estate, and in this respect it differs from the case of *Sharpley v. Foxwood's Ex's*, 4 *Harr*. 336, where the court held that if there be no direction as to the object of the conversion, and the land is directed to be sold, it is a change, out and out, of the realty. Here there is a special direction to pay the wife thirty-five hundred dollars out of the real fund and to divide the balance between the brothers. There is, then, no fair or satisfactory inference to be drawn from the context that Mr. Cooch intended to exonerate his personal estate. As was said by the master of the rolls in *Brydges* v. *Phillips*, 6 *Ves*. 570, it is only a probable conjecture. There is no certainty, no clear, unambiguous intention to be collected from the whole will, that he meant that. There is no ground upon which to judicially collect a settled intention. The word "all" prefixed to "my personal estate" is not sufficient to make a specific legacy, which is of a particular and individual character, precisely described and limited as to its nature, value, or the place where it may be found. But admitting the legacy to the wife to be a specific one, the debts must still be paid out of the personalty, unless there is at the same time an express charge on the realty for that purpose, or an evident intention to make the charge. A testator

must comply with the rules of construction and the settled principles of law which have been established as well to carry out his intention, where it is consistent with them, as to administer the estates of deceased persons according to a fixed and regular order. Looking at the will alone, and extracting its meaning by intrinsic evidence, there is wanting that clear, unequivocal, and manifest intent which is required to exempt the natural and primary fund, and to throw the burden upon the real estate.

*Wootten and Houston, Judges,* concurred.